1-24-0875 Chicago John Dineen Lodge 7 v. City of Chicago Good morning, Council. Before we start, just a couple of things. First of all, please keep your voices up. This microphone records, but it does not amplify. And there are people all the way in the back who want to hear every word you have to say. Secondly, we allot 20 minutes a side with 5 extra side, 5 extra minutes for the appellant. You don't need to reserve it. That is your 5 minutes. We will be generous, not unduly generous, but generous with time. So don't worry too much about it, but stay at. So see, we've read everything, and you can keep that in mind. Though to the extent you want to elaborate a little bit so that people who may not have read can follow what you're saying, we'll give you some latitude to do that. So with that in mind, would the lawyer who is going to argue for the appellant please begin? Good morning, and may it please the Court. Matt Pierce on behalf of the appellant, Chicago John Dineen Lodge 7. The Circuit Court erred in this case when it overstepped its authority and improperly struck down two provisions of an interest arbitration award, which had established the terms for the next collective bargaining agreement between the union, Chicago John Dineen Lodge 7, and the employer, the City of Chicago. The vast majority of the arbitration award that was entered by the Dispute Resolution Board, or DRB, had already been accepted and ratified by the City of Chicago. With respect to those portions of the award that the City attempted to challenge, the Circuit Court addressed and rejected most of the City's challenges to the awarded language in the DRB's award. The Circuit Court confirmed the portion of that award granting officers the statutory right to have any disciplinary issues, including suspensions over 365 days and separations, decided in the first instance through grievance arbitration as opposed to before the Police Board. It's the officer's choice, correct? They can go to the Police Board or they can go to grievance arbitration. That's correct. The officer has to make that election, and then ultimately the Lodge, as the union, has a decision whether it wants to take that case to arbitration or not. So in both instances, there is an election.  The Circuit Court also confirmed the portion of that DRB's award that made this right retroactive, and it confirmed the portion of the award holding that labor arbitrators do not need to receive Police Board training in order to be qualified to hear these grievances. The City has not appealed any of those rulings, so none of those issues are before the Court today. The only two provisions of the DRB's award that the Circuit Court struck down were, first, the DRB's determination that arbitration hearings for these lengthy suspensions and separation cases would continue to be conducted privately rather than open to the public. That was struck down by the Circuit Court. And, second, the DRB's determination that officers challenging these lengthy suspensions and separation cases through arbitration would continue to remain in case status and would not be required to serve any suspension or discipline until the final decision was issued by the arbitrator. In vacating these two provisions, the Circuit Court failed to give the required deference owed to the findings of the DRB's neutral chair. Instead, the Court replaced the judgment of the neutral chair, the arbitrator, with its own judgment and rejected the contract provisions awarded by the arbitrator because it believed that alternative language would be preferable or would better accomplish the goals underlying this whole process and the public policies of the State. This Court should reverse the Circuit Court's surrounding vacatur and, instead, confirm the arbitration award in its entirety. Now, before turning to the substantive arguments on those two issues, I do first want to address the level of deference that is owed to the DRB's award and the findings in that award. As Illinois courts have held for several decades, judicial review of a labor arbitration award is extremely narrow and highly deferential. Do you think there's any difference in the standard in an interest arbitration as opposed to a grievance arbitration? There is not, no. And that, I think, has been made clear by this Court in the 2003 town of Cicero case. The Court restated all of the existing standards that are applied in grievance arbitration review. That was a Section 14K case looking at an interest arbitration award. And the Court stated that they would give the same level of deference to the findings in that case. It's also important to note that the principal argument raised by the City in this case was not under Section 14K of the Labor Act, but it was a public policy argument. And for public policy cases, this Court has also made clear, going back to the 2014 case of the village of Pozen, the Court said that on a public policy challenge, the Court may not disturb the arbitrator's findings with respect to fact or law. And that's actually consistent with the U.S. Supreme Court's guidance in its Misco case. So I think the same level of deference should be applied. And the same narrowness to the public policy exception applies. So we can look at all of those cases if we want to. Precisely, yes. But that's unless it's arbitrary. Correct. Well, so under Section 14K of the Labor Act, that's the section dealing with review of interest arbitration awards, and that allows for a challenge if the award is arbitrary or capricious. However, the village of Pozen case and other cases that we've cited in our brief establish that you have to accept the findings of the arbitration panel and then review whether those findings result in an arbitrary or a capricious finding. So that the factual findings of the arbitrator should never be disturbed, even under Section 14K. In this case, in both the supplemental interim award, which was issued prior to a final opinion, as well as the final opinion and award from the DRB, the arbitration panel held that the party's past practice is that arbitration proceedings under this collective bargaining agreement shall be private. Yes, okay. But these suspensions of more than a year and discharge were not sent to arbitration. They were sent to the police board. And there was a practice for 60 years of those proceedings being open. So the past practice of arbitration was that the arbitration was closed, but the past practice in these cases was that they were open. And are you saying that we have to accept that the arbitrator's finding that the only relevant past practice is the arbitration practice? Well, the finding of what the status quo was is, I think, an essential part of what an interest arbitrator sets out to do in deciding what the language for the next contract shall be. The arbitrator first has to find what is the status quo for this provision and should we change the status quo. So that finding of the status quo is a finding by the arbitrator that the court should be bound by, yes. But if the arbitrator misstates what the status quo is, don't we have an obligation to then reverse? Well, I think on review of any type of arbitrator's award, Illinois courts and the federal courts that apply similar principles have held that even gross misstatements of law or misstatements of fact are not a basis to overturn an arbitrator's award. It's the arbitration panel that the parties have contracted and agreed to decide these issues for them. So the court's rule has to be the rule. They wanted to decide it as a judge. Oh, well. Can you point me to which of the several arbitrator's decisions he makes his finding that the relevant status quo is private arbitrations, closed arbitrations? Yes, so that is stated. I have the record size, which is C-1495. I believe that is the supplemental interim award, which is the first award that really dealt with private versus public. And then it's restated in the final opinion award in the record 1554 through 55. The DRV held the same with respect to pay status. Again, made the determination that the status quo for this issue was the procedures that already existed for grievance arbitration under the contract, including suspensions up to a full calendar year, 365 days. The DRV found that the status quo was remaining on pay status until a final decision was entered and found that there was no basis to deviate from that practice with respect to these new types of disputes. Can you help me understand, how is a judge supposed to divine public policy? A well-defined public policy. Dominant public policy.  So the Supreme Court has given guidance on that in the two AFSCME decisions and referencing back to the 1910 decision of Ziegler, which stated that courts should look to our state's constitution, our statutes, and if those are silent, to the judicial decisions of the state. And anything beyond that? There's a reference in that case as well to the constant practice of government officials never actually seeing a decision, finding a public policy based on that. So typically it's to be drawn from what the General Assembly has stated, and the General Assembly is really tasked with declaring what the public policy is for the state of Illinois. I have what's kind of a silly question, I think, because nobody ever talks about it, but what about the fact that the municipal code required that the police board make these decisions? Is that statute just irrelevant, or? In terms of defining the public policy of the state of Illinois, yes, it would be irrelevant. Number one, that's not one of the sources that the courts have ever said we look to. We don't look to municipal laws and local rules. But no, that's the state statute, the municipal code, the Illinois municipal code, I think references the police board being the decision maker on these discipline cases. Nobody talks about it, so it must not be relevant, but I'm just curious. Yes, I don't think any party has argued that here, and I believe that would be because those sections of the municipal code can be disregarded by a home rule unit like the city of Chicago if it chooses to adopt separate, different policies. Have you ever seen a case where a consent decree became the source of an expression of public policy? No, Your Honor. I'm not aware of any case where that has been relied on as the source or the basis of public policy, and I think it's important to distinguish here. Circuit Court relies heavily on that 2019 consent decree in this case, and there may be paragraphs of the consent decree that reflect a public policy that's written into an existing statute for the state, right? But the policy is not created through a consent decree, which is, of course, a settlement agreement between the parties to litigation, not an adjudication of rights. So that really can never and has never been the source of public policy. In order to vacate the DRB's language in this case, the Circuit Court had to reject numerous factual findings made by the arbitrator, and I think most importantly, the Circuit Court rejected the DRB's findings as to what the status quo was for both of these issues that we've been discussing. Circuit Court turned the DRB's status quo finding on its head and replaced those findings of the DRB with its own conclusion that the status quo here should be based on those historical procedures that had been followed by the police board. And so rather than simply redlining the existing contract language, which is what the DRB panel did here to add suspensions over 365 and separations to the existing contract language for arbitration, the DRB effectively said, you need to write an entire new section developing new procedures that would only apply to these lengthy suspensions and separations. And... Wait, the DRB did or the Circuit Court did? The DRB, if you look at the... It's in Appendix C to the Supplemental Interim Award. That's the August award at the record C-1528-31. The DRB took the existing contract language in both Article IX and Appendix Q, and you can see the minimal changes that the arbitration panel made in order to bring these into the existing language. Right, they made minimal changes, but you're saying the Circuit Court did would have made a whole new kind of hearing that didn't exist under any previous collective bargaining agreement. That's correct. In order to comply with the Circuit Court's order in this case, the parties would have to negotiate a brand-new policy, brand-new procedures just for those cases alone. Can I ask, just as a channel matter, by way of background, practical, across the state, in other jurisdictions outside of Chicago, how are police disciplinary cases handled? Are they handled in arbitration? It depends on the jurisdiction. Many jurisdictions still have a police board or a board of fire police commissioners that hears those types of cases. And those would be public? Those are typically public, yes. But in any instance when the officers or their union has insisted on having grievance arbitration for all disciplinary issues, which is a right guaranteed under the Labor Act, those have been moved to grievance arbitration. And in all other jurisdictions of the state, grievance arbitration is conducted in private. There's not any other jurisdiction that we're aware of within this state that does public arbitration. So is the final arbitration award, that's public, isn't it? It is, yes. And that's actually set out in the text of the FOIA statute, which carves out disciplinary proceedings relating to the adjudication of disciplinary issues, but it does allow for the publication of the final award. How about in the collective bargaining agreement, as provided in the interest arbitration, it still would have the final award be public? Correct, yes. That is the practice that has existed between these parties for decades because it's set out in state law. So for those suspensions up to one year that have historically gone to grievance arbitration, those proceedings are all private. They're conducted in a conference room, not open to the public. But when a final award issues, that is made available to the public. And at that point, do the records of the arbitration become public or do they just remain private? The records themselves are typically excluded under the language of FOIA, that's Section 7-1N, Levy Act, which carves out those, basically all of the documents and records relating to the proceeding, but specifically states that the final decision shall be made available. But, of course, if you go to court to enforce the arbitration decision on a disciplinary matter, then the records of the arbitration become public? In some cases, a party will file the entire arbitral record on review. The appellate courts have actually stated that courts, on review of an arbitrator's award, should not be digging through the records to find errors. It's really, is there an issue on the face of the award that requires vacature? And so, in most cases, that record actually should not be filed with the court. But, yes, in some cases. So it may never become public? Yes, and we're talking specifically about, for example, a transcript. Right, a witness's testimony. Correct. Going back to the status quo issue, does the arbitrator acknowledge at any point that the status quo was that serious discipline and discharge was treated differently than more minor discipline? I mean, that was the status quo, again, for 60 years. The arbitrator does acknowledge that the police board had historically heard these types of cases. But at least as far back as 1981, when Lodge 7 entered into its first collective bargaining agreement with the city of Chicago, those cases have gone to the police board because the parties to the collective bargaining agreement agreed to do so. Right. And as of this round of contract negotiations, for the first time, the Lodge has said, we no longer agree. So we see. So, yes, I think to answer your question, the arbitrator did acknowledge that that is where these were historically heard. However, because. Does that create a public policy? The past practice of being before the police board? No, I don't think it does. There's some reference, I think, in the city's brief to the constant practice of government officials, and they base it on that history, right, the history of going to the police board. As an initial matter, that was not argued to the circuit court. It's a brand new basis that is raised on appeal, so I think it should be forfeited. However. Forfeiture, you can urge any basis supported in the record to affirm it. You write for any reason, we affirm for any reason. It's only if you're seeking to reverse the forfeiture waiver. Well, Your Honor, I think this court has specifically held that a party seeking to affirm the vacatur of an arbitration award is barred from raising new basis for vacating that award. That was in the 2022 case of City of Chicago versus IBEW Local 9. And in that case, the court noted that the prohibition on. We're in the labor world, which is labor law, which is just different. In many ways, Your Honor, it is, and. But don't you think that it is somewhat difficult to divorce the policy arguments that the city has made consistently, which is that we have a public policy of transparency. We have a public policy of accountability from the fact that there's long practice of having these open. And now we're shutting the door for the future. And that shutting the door is contrary to the policy that is reflected in the consent decree, that is reflected in FOIA, that we want accountability and we want transparency. So that we can't really divorce the history from the policy argument. Well, as an initial matter, Your Honor, those cases that go to the police board under the DRB's language, if it is in fact confirmed, will still be governed by the police board procedures. Those will be open to the public. How many do you think those are going to be? Just asking. We're having all this fight, and they're going to go to the police board when they have the choice? Is that really what you think? There have always been cases in which the Lodge, as the labor representative, determines that it's not a good use of its members' resources to pursue a case to arbitration. That's been the case even with the lower suspension cases. And when that happens, the Lodge says, we are not taking this to arbitration. It then moves to the police board, and it follows their procedures. I think it's important, though, to take a step back and determine what actual public policy has been identified here as being violated. It's not that all labor arbitrations must be open to the public, not that all public employees arbitrations are open to the public. The General Assembly passed a law, as has happened in some states, I think Minnesota, that provided that police disciplinary arbitrations must be public. That would be an expression of public policy that would override. Yes, yes, and at that point, every collective bargaining agreement for the hundreds, if not thousands, of law enforcement departments across the state would be required to comply with that law, and we could not negotiate our way around that. The issue with the city's arguments in this case, and the issue with the circuit court's reasoning, is there is no law on the books that says anything about police disciplinary hearings being public, police arbitrations specifically being public. That does not appear in FOIA. That does not appear in the consent decree. That does not appear in any of the other statutes that are referenced for the first time on appeal. And I think it should be clear that public policy is really a statewide concern, something that applies across the board. The public policy that was found here was a policy in an interest of transparency for those Chicago police officers who are facing a certain level of discipline. And any public policy that requires this level of specificity and really arbitrary line drawing cannot be a well-defined and dominant policy for this state. You have used about 20 minutes, so I want to let you address anything else that you feel you need to address in your opening argument. Thank you, Your Honor. Very briefly, the other issue is the remain-in-pay status issue, which the DRB found, again, found the status quo for grievance arbitration under this contract is that officers shall remain in pay status. Under the 14K analysis, which is what the circuit court applied here, the court is tasked with looking at that language that was awarded and determining was there a rational basis for that language. The circuit court in its decision didn't really engage in that review. Instead, it said, if we reject that finding of a status quo and instead focus on the police board, that police board procedure has a rational basis. So really, the circuit court looked at different language other than what the DRB had awarded and said this could have been rational had it been awarded. But that's really not the scope of the court's review under 14K. The award sets forth the basis for that finding, including, number one, that that's been the status quo, number two, that there is a presumption of innocence that has long been applied in labor arbitration cases as a guiding principle for deciding discipline, and number three, the court found that officers being removed from pay status would result in irreparable harm to those officers. The DRB did consider all of the statutory factors raised by the city and argued by the city, and as it's required to do under Section 14 of the Labor Act, it balanced those interests. And in the end, the DRB found that remaining on pay status was the more reasonable proposal between the two. That satisfies the test for rationality and is not an arbitrary and capricious award. Can you address the timeliness argument briefly? Briefly, yes. The original, the final opinion award in this case was issued in October of 2023. That incorporated all of the previous awards that have been issued through this very lengthy arbitration process. And that final award is what stated, this is what the contracts shall say. The city did not file any challenge in court to vacate that decision until 119 days after the award was issued. That is beyond the 90 days established both under 14K of the Labor Act and under the Uniform Arbitration Act. But were the parties not still negotiating during that time? The parties, when city council voted to reject that first, the final award, the collective bargaining agreement between the parties establishes the procedure that happens next. It actually carves out some of the sections of 14K of the Labor Act that would otherwise apply. Specifically, Section 14N of the Labor Act says that if the award is rejected, the parties shall meet and a supplemental award shall issue. The parties negotiated in their contract to remove themselves from that provision and created new procedures in Section 28.3 of their CDA, which says that if it's rejected, the parties shall meet and discuss. And that's it. It does not provide for any supplemental award. So consistent with the collective bargaining agreement, the city should have known that there would not be a requirement for a supplemental award. The arbitrator did subsequently issue a supplemental, what he called a supplemental final opinion and award. And if you read that, it's really his response to the city council.  It doesn't really address the substance of the prior award. It does not disturb it. So you're saying the city blew the statute of limitations because it didn't know there was going to be a supplemental award? The city blew the statute of limitations because it did not file within 90 days of that final opinion and award. Regardless of whether that second award was going to issue, which under the contract it was not required to. And even if you look at the supplemental final opinion and award, the arbitrator states, I really have enough information to issue this supplemental final award, which I am not even required to issue. He's acknowledging in the award that that was not part of the procedure in that case. So what do you think the purpose of the language meet and discuss is, if there's no anticipation that there would be continued negotiations and that potentially there would be a supplemental award or a change in the award? I believe the expectation there is you have what's been awarded by the arbitration panel and you have city council saying we do not accept some portion or all of that. The idea is bring the parties together, see if they can resolve it. And if they cannot resolve it, the arbitration award stands. And then it's up to the party trying to reject that award to go into court and seek vacatur. But if the time has not stayed or told, what is the motivation or the incentive to continue attempting to negotiate the final issues? I think there's always a motivation to continue negotiating, which is to avoid litigation like this. If the parties could have resolved this issue after that final award was rejected, then we would not be in court fighting over these issues. But I think because that challenge by the city was not raised timely, the circuit court should not have actually taken up any of the challenges raised. And for that reason, I think as we stated in our brief, that's why we believe that the challenge in part was a frivolous challenge to the arbitrator's award. And I know I've overstayed my time very much, so I appreciate the court's time. We'll see you after we hear from the city. Thank you. Aya Barnea for the Appleese. May it please the Court. There are two provisions of the Interest Arbitration Award that are at issue here. The requirement that the most serious discipline proceedings be closed to the public, and the requirement that the city pay officers facing that level of discipline throughout their disciplinary staff. Can I talk to you for just a second because I don't think we have your name on the record. Oh, I'm sorry. Aya Barnea for the Appleese. Can you spell your last name? Sure. Her B-A-R-N as in Nancy, E-A. Okay. The circuit court correctly vacated those two aspects of the arbitration award, and its judgment should be affirmed. I'll start by addressing the Board Chair's finding that arbitrations for the most serious discipline must be closed to the public. That aspect of the award violates the public policy of maintaining transparency by granting public access to government-sponsored adjudicatory proceedings. That policy is found in the First Amendment to the United States Constitution, the Freedom of Information Act, the Consent Decree. But aren't personnel matters, disciplinary matters, routinely handled privately, right? Most are, but there is a policy here, and government officials have. . . Didn't somebody say a government official said it's, quote, morally not right, end quote, to speak publicly about personnel matters? That was the mayor of the city of Chicago. On another occasion, he said, I don't ever discuss personnel issues. I find it to be highly offensive, irresponsible, and raggedy. I'm puzzled why we recognize certain matters for certain employees should be handled privately, and in this instance that that policy gets no consideration? We've. . . There is a public policy that has established that this kind of proceeding is different, and it has always been handled this way for 60 years. But the most serious discipline proceedings have been. . . That's not reflected in the statute, right? It's reflected. . . The way it's been carried out is there is a First Amendment right to attend this kind of proceeding, and it's also reflected. . . It sounds like you have a question there. Why wouldn't there have been a First Amendment right to attend arbitration related to discipline for something less than a year? Because this kind of discipline proceeding has been historically open to the public, and that openness has played a significant role in the effectiveness of the proceeding in question. And it's always been true that the most serious discipline proceedings for 60 years have been handled in public, in the police board. And those proceedings. . . If that is a constitutional right based on the First Amendment, that would apply across the state. It would if there was any proceeding that met the requirements of being historically open to the public and where that process had played a significant role in the functioning of the process. And if public access had played a significant role in the functioning of the process in question, then, yes, that proceeding. . . There would also be a presumptive First Amendment right to attend that proceeding. So it's in your view, in your argument, it's the history that gives this, that underlies this public policy. The public policy is composed of four things. The First Amendment to the United States Constitution, FOIA, the consent decree, and the constant practice of government officials. The First Amendment analysis has two elements. But we have to start with the practice, don't we? Because there's not statewide. . . It wouldn't. . . It is not required as a matter of public policy throughout the state that every police discharge case be public. That's not what you're arguing. You're saying in the city of Chicago, because of the history of the city of Chicago and the practice of the city of Chicago, that's what gives rise to this public policy in the city of Chicago, aren't you? A sui generis public policy. Well, you know, Chicago is treated differently in many ways as a matter of public policy and statute. What's your best case for that? Can I have an answer to the first question, please? Yes, thank you. This First Amendment right would attach to any proceeding that fulfilled the two elements that the police board or the hearings that took place before the police board meet here. Have they historically been open? And has the openness played a significant role in the functioning of the process in question? That would be true for any kind of proceeding. The kinds of proceedings that are at issue here meet those requirements. What's your best case for this divining public policy from this penumbra? So, our Supreme Court has stated that public policy is dependent, it's the public policy of a state or nation, sorry, is drawn from a state or nation's constitution and statutes, judicial decisions, and the constant practice of government officials. The lodge brought up, asked me in Ziegler, that says public policy is drawn from a state or nation's constitution and statutes. This Court has applied federal law in the International Brotherhood of Electrical Workers case. I believe it was a case dealing with the National Labor Relations Act. So, federal law is certainly one of the things that comprise public policy. So, it's entirely proper to consider the First Amendment. Sure. But what about the historic practice? That would fall under the... It's the practice of government officials. And the state, there are no cases that define exactly what that is. However, this Court has relied on locality-specific documents to find further support for what a public policy is. That was a City of Chicago v. Fraternal Order of Police dealing with retention of certain records. This Court relied on a Department of Justice report and a task force report. So, it is entirely appropriate to consider locality-specific things. And in this case, there is a constant practice of granting the public in-person access to the most serious police discipline proceedings. Those can take place now in arbitration under the Illinois Public Labor Relations Act, but that does not take away the public's right to attend those proceedings. In addition to having been open to the public for six decades, police board proceedings share the same features as other adjudicatory proceedings to which there is a presumptive First Amendment public right of access. The police board functions similar to a court. It holds evidentiary hearings. The accused officer may appear with counsel, present witnesses and evidence, and its decisions are final. And the Lodge, in its reply brief, concedes that all of those court-like features carry over to arbitration. The Lodge, in its reply brief, describes arbitration as an adjudicatory process, a formalized legal proceeding that leads to a final enforceable decision where an officer has the right to call witnesses and present evidence. What do you make of the arbitrator's, one of the awards, where he said whether or not a given arbitration should be open to the public is really something that should be entrusted to the arbitrator? That may be the case for private arbitrations. The arbitrator, the board chair in his award, was relying on a lot of sources that pertain to arbitration that takes place between two private parties. That the trend for government-sponsored arbitrations, as we know in Strine, so the Third Circuit case, is that government-sponsored arbitrations are open to the public. Cook County has an open, has an arbitration program that's open to the public. There's the San Antonio Police Department has public arbitrations. The rules that apply to, and the other thing is that the American Arbitration Association awards or rules state that arbitration is private unless the law provides otherwise. Well, here, the law provides otherwise because there is a well-defined and dominant public policy that compels that this kind of proceeding must be open to the public, because it is a government-sponsored adjudicatory proceeding to which the public has a presumptive right of access. Can you respond to the appellant's argument that we are bound by the arbitrator's finding that the relevant status quo is the way minor disciplinary actions were handled, that that's the relevant status quo as opposed to the 60 years of police board hearings? I think that, respectfully, the lodge is kind of conflating two issues. Public, whether an award violates public policy, that's reviewed de novo. Public policy is a matter for the courts. There is no deference owed. So the fact that it was status quo to have arbitrations be private, the constant practice, the way that these, there's always been a dividing line between the most serious misconduct allegations and less serious misconduct allegations, and most serious as a constant practice has always been open to the public. So his, quote, unquote, factual finding is kind of irrelevant in your view to the public policy determination? Yes. Yes. And I'll get to, when we talk about the pay status, we also disagree with the level of deference that has to be applied to an interest arbitration award. But returning to the setting for the most serious discipline proceedings, having public access has been critical for the effective functioning of the police department. The public has to have the opportunity to see in real time that officers will be disciplined appropriately for serious offenses. But wouldn't they, they will see that in the final arbitration award, right? That's not enough. Where there is, first of all, where there is a First Amendment presumptive public right of access, access has to be immediate and contemporaneous. That's what the cases say. And it is having after-the-fact access is no substitute for someone who is directly affected by the allegations to come and see for themselves. It's no secret that there is a legacy of mistrust in the community of the Chicago Police Department. And it is critical that when the stakes are the highest, people are able to come and see how the system is working themselves and see that it's working. And for the officer, this is, whether an officer is going to be suspended for more than a year or discharged, this is the most serious discipline. This is someone's job on the line. And having public access enhances the credibility and the legitimacy of that procedure. See, I think you're making very compelling policy arguments. But the problem, and that's the problem in this case, is we are not policymakers. Sure. We're not. So you have to show us where this policy that you're talking about is set forth somewhere in state law, federal law. And I guess, I mean, I guess that's where you keep coming back to the past practice and the First Amendment and the consent decree and FOIA. But, you know, the more you can tie those into some statement of policy by somebody who is a policymaker, that makes our job easier. I guess that's what I'm saying. We're not here to make policy. But this court can identify that there is a policy. And there is a policy here comprised of those four things, the First Amendment, FOIA, which says, which reflects that transparency is a state value. It states that. All records are exempt from FOIA, aren't they? There's an exception. That's correct. FOIA, we're not saying that FOIA is the be-all, end-all of the policy. But it is a reflection that the state values transparency. But it has to be well-defined, right, and dominant. And I guess the difficulty with this case is it seems to me that there are competing goods here, right? We have the respect for collective bargaining and that arbitral process and these very compelling policy arguments that you've articulated and that your amnesty have articulated. And if we have these competing policies at odds, can we really say that we have a dominant policy? Yes, because the other – some of the other policies that you're referencing say nothing about whether arbitration should be public or private. Well, neither does FOIA, and neither does the consent decree. Well, the consent – respectfully, I disagree. The consent decree is formal recognition by a statewide officer that the Chicago Police Department needs more transparency and not less. And as the amicus brief from the attorney general says – mentions, it builds off the foundation that the most serious discipline proceedings are open to the public. It assumes that those are public. And that is a positive thing that the city was doing. And the consent decree is the agreement of a statewide officer that transparency is critical for the functioning of the Chicago Police Department. So it's – Do you have any case in which a consent decree has been the basis for a public policy exception to the enforceability of contracts or – I don't have a case about the consent decree specifically, but as I mentioned before, this court has relied on a Department of Justice report and task force report related to police accountability issues in the case that we mentioned in our brief and used that as further support for evidence of a public policy. Are there other jurisdictions that are comparable to the city of Chicago that we can look to regarding the public policy for transparency and things of that sort? We do set in our brief three cases that describe government-sponsored adjudicatory proceedings that are very similar to how the police board has functioned. There's the Second Circuit case involving New York City Transit Board that adjudicated offenses – transit-related offenses, a public utilities board in Vermont, and attorney discipline proceedings in New York. And all those processes in those cases line up with what the police board is doing or has done in the past and what arbitration would look like. They are formal proceedings where there is a final decision, where someone's individual rights are at stake, and they look and function a lot like a court. And that is true of how police board proceedings have functioned here. Before you sit down, will you address the timeliness of your motion to vacate? Sure. The 90-day deadline to challenge the award ran from the supplemental final award. It did not run from the initial award. The parties' collective bargaining agreement, I believe it's section 28.9 – I'd have to double-check that – states that if city council rejects an award, the parties will meet and they will consider whether any modifications can be made. So the parties contemplated that the initial final award – the nomenclature is tricky, I know – was not the end and that there would be another decision. And the award of the board chair, the initial award, stated that the parties could meet and that he would – and then the board chair also mentioned that he would accept additional materials from the parties. So everyone understood that in that – I believe it was October 2023 – that award was subject to change, and it was in flux. It would have made no sense under the parties' agreements for the 90-day deadline to run from that award. If you'll permit me, I'll just briefly address the pay status issue. We believe that the part of the award that required offers to be paid throughout the most serious discipline proceedings was arbitrary and capricious, and the Circuit Court correctly vacated it. Just to clarify the standard of review, review of whether an interest arbitration award is arbitrary and capricious is less deferential than review of a grievance arbitration award, which is limited to the question of whether the arbitrator interpreted the contract. What's your support for it being less deferential? So under section – under the Illinois Public Labor Relations Act – well, first of all, interest arbitration is a different animal. This is because the parties have been unable to come to agreement on a contract. It's a substitute for contract negotiations. So the court's job is not just to figure out if the arbitrator interpreted the contract. Determining under the statute one of the reasons to vacate a provision of an interest arbitration award is whether the award is arbitrary and capricious. That involves examining factors outside the bounds of a contract and assessing the reasoning of the board chair. Whether the board chair relied on an improper factor, failed to consider an important aspect of the problem, or offered an explanation that's counter to the evidence. So this Court has to assess the board chair's reasoning and what went into the decision. And the court is not bound by the board chair's view of the facts because of this assessment of the board chair's reasoning that has to take place. So the standards that the large sites that apply to grievance arbitration awards do not apply here. The board chair here ignored the status quo. To clarify, the time period at issue is after an investigation into an officer's alleged misconduct is complete and the superintendent has filed charges seeking discharge or suspension of more than a year. Whether an officer remains in pay status at that point has never been determined by the availability of arbitration. The dividing line has always been the seriousness of the offense. The board chair also relied on a factor that does not even apply in the public employment context, which is the presumption of innocence. The standard that does apply is due process. And under that framework, a governmental entity is not required to pay an employee once there's sufficient evidence of misconduct. The board chair also radically departed from the status quo and created an exception for lodge members that applies to no other collective bargaining agreement in the city. And the board chair's decision also ignores the problems that it creates for the Chicago Police Department and the city. Once the superintendent has filed charges and concluded that the officer cannot be trusted to perform his job, the department cannot make use of that officer. And paying an officer who's not performing police functions is a poor use of limited public resources that the city could not recover. The alternative response unit, which the lodge raises, is not a solution that may be appropriate during an investigation, but not once the superintendent has determined that the conduct is so serious that the officer cannot be trusted with any responsibility. If there are no other questions, we'll rest on our brief for the attorney's fees issue. Any more questions? No. Okay. Thank you. Thank you. And we ask that the judgment be affirmed. Now we might hold you to five minutes. That's fine, Your Honor. I just have a few points that I'd like to briefly address based on the city's argument. The first, I think it should be clear to the court that the city is really asking this court to expand the scope of judicial review of arbitrators' awards from the well-established level of review, which is extremely narrow and deferential. With respect to public policy, counsel for the city stated that that is effectively a de novo review for the circuit court to look and determine whether public policy is violated and therefore facts do not need to be accepted, factual findings from the DRB. I want to quote the case which is referred to as AFSCME 1. It's the 1988 Supreme Court case which first really adopted this public policy exception. And the court says, quote, in order to vacate an arbitration award, the contract as interpreted by the arbitrator must violate some explicit public policy that is well-defined and dominant and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. The court language there is as interpreted. The courts have always looked at the contract as the arbitrator interprets it when they're applying the public policy exception. This is where grievance arbitration and interest arbitration get a little difficult to... They're not quite the same. I mean, I think we all agree with that. Nobody's interpreting the contract here. Well, the interpretation that takes place in interest arbitration, part of it is what was the contract language before, and then, of course, the determination is what should it be moving forward. But I believe this case reflects that public policy challenges are bound by the same level of deference as grievance arbitration under public policy. Yes, I do understand that, and I do think it says that. I'm just not sure what it says or what you think it says about factual findings vis-a-vis interest arbitration. I mean, I don't know what the factual findings that you think were bound by in interest arbitration. I think you're saying, and I don't know if I... that were bound by his interpretation of what the status quo is in terms of applying a public policy exception, and I have to be honest with you, you haven't convinced me that's true. But if you have anything else to say to convince me, feel free. But I don't know how that fits. He's making a factual finding that the relevant status quo is how these lower-level disciplinary matters were treated, and that there is no long-standing practice of treating serious offenses in a public portal. He's making that finding, and we're bound by it? Really? Is that your position? I think, yes, the status quo is a finding made by the arbitrator, and it's important because the court is not looking at different alternatives for what the language could be in deciding which is the best, which would provide for the most transparency, the most accountability. The question is solely, was the language awarded by the arbitrator in this case clearly violative of public policy? And so I think with that in mind, we have to accept the findings of the arbitrator in applying that to public policy. I do want to briefly address the First Amendment arguments that have been raised by the city. As an initial matter, I think we point this out in our briefs, the First Amendment was never mentioned before the circuit court. There was no record developed, no argument made, and consistent with this court's decision in the IBEW Local 9 case, that argument should be forfeited and should not be considered as a basis to vacate. In terms of the cases that are cited by the city for the First Amendment presumptive right to access, that right comes out of an implied right under the First Amendment for access to court records. The Supreme Court case cited dealt with criminal court cases, and the Seventh Circuit cases dealt with criminal and civil cases. There is no court case in the country that has addressed disciplinary proceedings for public employees or police officers and found that there is any First Amendment right to access there. And I think the city wants to focus on the change that will come, right, from moving these cases from the police board to arbitration. In reading through the DRB's awards, there are lengthy string cites of all of the interest arbitration awards where a party has insisted on moving away from a board like the police board to grievance arbitration, and that had to be awarded as a matter of state law. In each of those cases, that move is to private arbitration. There's not a single instance that the city can point out in the state of Illinois where you are moving from a public body like a police board or a board of fire and police commissioners to grievance arbitration, and you had to keep that public. Grievance arbitration, as an alternative dispute resolution, one of its key functions is that it is fast, it is cheap, and it is informal. And that is consistent with the state policy of Illinois and federal policy of the U.S. government to favor arbitration, especially in the labor context. Okay, unless there are any further questions. I do have a question. Let's talk practicality. There is a grievance arbitration. There's been a serious offense by an officer, and there's an arbitration hearing that is closed. How do you suggest that the public has access or is able to investigate the proceedings that occurred in a particular instance? I just need you to break that down for me. Sure, so I think the public's access will be the same as it has been historically for all lesser suspensions. And when we say lesser, that still includes someone being suspended up to an entire year. So those are serious infractions that involve that type of charge. For those cases, historically, the investigating body, whether it's COPA or the internal affairs unit within the police department, their investigative records have been found to not be covered by that FOIA exception. So COPA, for example, posts its investigation, I think, in real time online, and that is made available to the public. That has been the case for grievance arbitration and will continue to be the case even under the DRB's award. The only part that is closed is the physical access, physical presence and attendance at the hearing. And I think based on the city's arguments, and especially in the amicus briefs, it appears that they are pushing not just for transparency and visibility, but an ability to be present, be heard, and potentially impact the outcome of these cases. I don't think I heard anyone say that they wanted to be heard, but just to have access. And so if the record is not made available, they have no idea what the process is. Am I, as a citizen, supposed to go and make a FOIA request for every disciplinary proceeding that occurred in the prior year? Do I go down December 31st of every year? And I want to see every proceeding that occurred in 2024. You won't get it. All right. So how do you suggest that the public is able to hold the officer, well, not the officers, but CPD accountable if they don't have access, if they don't know what to ask for, if they don't know that the proceedings took place? Well, I mean, I think the level of public access, and there is certainly in our statutes some guaranteed access of the public to these types of records. But the scope of that access has to be defined by the statutes themselves. And the General Assembly has seen fit to put it into FOIA that the final decision is what's made available. We're not talking about a quasi-criminal proceeding. Of course, if there is any case involving alleged criminal misconduct by an officer, that will proceed to the criminal court. That will be open as it always has been. We are talking about an employer trying to make a decision to fire its employee. This could be for issues involving use of force, the kinds of things that the amicus are relying on. It could also be for something as simple as not submitting the right paperwork for sick leave and being accused of sick leave abuse. It's a disciplinary proceeding. It's not quasi-criminal in nature. So I think to answer your question, the investigation has always been made available by COPA and will continue to be made available. The final award is made public and will continue to be made public. The only part that is closed off, which has always been closed off, for all arbitration of public employees across the state of Illinois is the actual hearing itself. And the evidence used at that hearing and any evidence that comes into that hearing. Correct. With the understanding that an arbitrator's award, if you look at the awards that are issued, they typically run through all of the evidence that was presented. They summarize the positions taken by each party. They summarize the evidence and witnesses, et cetera. So that really is the public seeing everything that was put forth at the arbitration. So with that, I would ask this Court respectfully to reverse the Circuit Court's vacatur on these two issues, find that the DRB's award was well-reasoned, rational, and consistent with public policy and should be confirmed in its entirety. Thank you. Thank you both. And thank you all for really excellent briefing and argument on this very interesting case. And we will take this matter under advisement.